This is one of the few times I don't have to thank a district court judge for sitting with us. We're down in numbers, but we've got a full court of appeals competent to this. Our first case of the day is Gloria Kurns v. AWChesterton. My name is Robert Pohl. I represent the appellant in this case, Gloria Kurns. This is a residency-only case in which there's no dispute that the cause of this man's death was his exposure to asbestos. I'm not going to review the facts because the court is obviously trying to do those. I really want to address the substantive issue, which is why we gave this oral argument. Let me ask a threshold question. There were 28J letters submitted by the appellees on the Atwell case. You don't really argue the Atwell case, and you did not file anything on Atwell. Do you concede that Conrail Act, Judge Giles' case, which is affirmed by us in the Supreme Court, makes Atwell essentially not controllable? No, Your Honor, because my brief addressed the question of what was wrong with the argument that Judge Giles' opinion and the decision, the affirmative, the summary affirmance by this court of that case. We addressed that in that brief. Why would we not think that was bonding on this matter? And the issue with that is there were two different arguments in that case. I'm talking about Judge Giles' case, since you asked me about Judge Giles' case. In Judge Giles' case, the Thomas of Pennsylvania case, the first issue was there was in fact actual conflict between a regulation of the FRA and an issuance by the state of Pennsylvania. In addition, there was the question of preemption. Now, he certainly addressed both issues, and in that case, in his opinion, said he believed there was field preemption, basically, taking the argument that my opponents made here. The point in the cases that we cited, such as the city of Akron case in the Supreme Court and other cases, is that summary affirmance by this court and by the U.S. Supreme Court does not necessarily mean that the argument, since there were two different decisions, two different bases for his opinion, were agreed to. Clearly, there was direct conflict between a federal regulation and a state regulation. But the Giles' decision was reaffirmed in 1982, is that right? Yes, sir. And the Norfolk decision of the Pennsylvania Supreme Court was in 1980? Yes, sir. So if reaffirmed and it's in a precedential opinion, which is precedent by virtue of being in the second or third, the second thing, why isn't that precedent? Because there were two different bases on which, since this court did not write an opinion and the U.S. Supreme Court did not write an opinion in that case. So they could have affirmed simply on the fact that there was a direct preemption. There was no opinion by either court. And the city of Akron case in the Supreme Court said, if there are two different bases, a mere summary affirmance does not mean that that case was adopted. That's the argument that we made. Are you saying Atwell was properly decided? Yes, ma'am. Did you file a 28-J letter so stating? We did not file a 28-J letter. And the reason that I didn't, Your Honor, is that Atwell is not binding on this court because it is an opinion of the Superior Court of Pennsylvania. For that reason, although obviously I agree with my position, I felt that the argument to you, well, it's somehow binding, would not be correct because it's not correct that it was binding because it's a Superior Court opinion. In fact, even the Supreme Court opinion, and I think the Supreme Court has a way to affirm that opinion, as I think they will, wouldn't be binding on you either. On the argument that this is a federal law question and that this court is not bound by the Pennsylvania Supreme Court on federal law questions. So you can see as well, I guess, that Oak is not binding on the city. I agree with that, Your Honor. I agree with that. Although this person lived in, well, he did choose in Montana, is that correct? Montana, yes. And so I assume the reason you filed in Pennsylvania had something to do with work, that this work was outliers compared to other states. Well, the question under this court's opinion in Strozik, which Judge Rendell wrote, I'm not so sure that that's necessarily true. I'm going to get to Strozik in a minute. So why did you file here? Well, because he had speeded up trial lawyers a lot. That under Philadelphia procedures, as compared to Montana procedures, we had a shot to get the case trial by who was alive. And that that's a big deal. Did he live in Montana? No, he was in Montana. He's a Montana resident, but we can force him in, but not enough to get to trial. But the reason we filed him is because Philadelphia speeded up trial procedure for Mesothelioma cases. Give us your best argument as to why there is no federal field preemption as a result of me being here. Well, it's your opinion in Strozik, frankly, Your Honor, at 358 Fed 3rd 271, where you said state law requires... And where is this in your brief? It's not. It's not in the brief at all, ma'am. I just have instant recall of that case. I asked for that for lunch yesterday. I was going to give you the citation. I found it in preparing for this argument. Wow. 358 Fed 3rd 271. And what did I say? And what you said in that case was a Federal Railroad Safety Act. It was a railroad crossing case. And what you said was that under the Federal Railroad Safety Act, state law remains in effect until the Secretary issues regulations covering the subject matter. Well, there are regulations. There are no regulations. There are no regulations. There are no regulations whatsoever. My opponents will agree with this, I think, in part. In part? In part, Your Honor. I'll explain to you where I think you'll agree with each other. I don't know that they'll agree with me. The Federal Railroad Administration has never issued regulations for in-shop safety. Well, but we're talking about the equipment at issue here. What is the equipment at issue here? Well, there are two different pieces of equipment. There are locomotives and there are brakes. In 1978, the Federal Railroad Administration, and we cited this in our brief and my opponents cited it as well, issued a regulation and they said, we're thinking about regulating in-shop safety, but we're not going to do it. We're going to defer to OSHA. And that regulation is cited in both of our briefs, ours and theirs. And what they said, what the FRA said in 1978 was, we would defer to OSHA for in-shop safety. Now, if we defer to OSHA under in-shop safety, then that brings up 29 U.S.C. 653, which says, regulations under OSHA do not preempt state law. OSHA doesn't have locomotives or locomotive shops. So the FRA said in 1978 that they would defer to OSHA for regulation of in-shop safety. Are you saying that this has to do with the handling of the parts? What is it that would require us to determine that this has to do with in-shop safety as compared to the physical properties and makeup of the equipment at issue here? Because the railroads have consistently litigated, and we cited some of these cases in our briefs, have litigated the question of whether the Border Inspection Act applies to in-shop cases. And railroads have consistently gotten circuit courts across the country to say that it does not apply to in-shop cases. This is an in-shop case. The BIA has to do with what we call over-the-road use. That is, this is a locomotive that's on the tracks moving along. In 1986, there was another proposal by the FRA to consider regulating asbestos on locomotives, and when the locomotive company said, well, there's no asbestos on the locomotives anyway, then the FRA, and again, both of us cited this particular regulation, the FRA again said, we're not going to regulate in-plant safety. So you go back, then, to what you said in Strozen and what the statute actually says, because the point of Wyeth, and this is the point that we made in our brief was that Wyeth reiterated the rule which you had presaged, I guess. But Wyeth is not a field preemption. Wyeth expressly abandoned the field preemption argument prior to the Supreme Court review. And what about English and Gaye and the other cases that we cited that said... But you can't cite Wyeth when they abandoned the argument. I understand your position, Judge. Let me again say, and again, in answering Judge Rendell's question, what is our argument? Our argument goes back to the statute itself, and it goes back to the U.S. Supreme Court's case, Terminal Railroad, which was cited in our brief. In Terminal Railroad, the U.S. Supreme Court said specifically that the BIA and the SAA, in the absence of specific regulations, do not preempt. And as far as I'm concerned, that case overrules NAPIER. That's what the U.S. Supreme Court said. Then Congress adopted the FRSA amendments in 1970, which the Pennsylvania Supreme Court adopted, thus affirming that the Congress of the League of the U.S. Supreme Court said in the 1940s in Terminal Railroad, that is, that there is no preemption in the absence of regulation. There has never been regulation of in-shop safety. What case law says this is in-shop safety as compared to equipment regulation? What case helps you on that? The one case that you have cited. There's no certain case that helps you. There is no certain case that helps us. It's no secret that outside of Pennsylvania and some trial judges in Boston, Indianapolis, and Phoenix, that the only other case that's ever adopted, followed our position, is Norfolk and Western and APPO. And I'm not going to try to mislead you with anything by saying that. The point is that all of the cases that we cited in our brief were to railroads. Let's go back a step. The BIA is to do strict liability into the FALA. And the railroads fought that and said, no, no, no. You can't cite the BIA for in-shop cases. You can only cite it for over-the-road cases. And that's the closest that I can tell you, in answer to your question, to a case that supports our position that the BIA does not apply to in-shop cases. If the railroad can't be held liable in the BIA, then these guys can't hide behind the window. That's really the point. Okay. No, Judge, you can ask the next question. You made an argument about the 2007 amendment to the FRSA. Your adversary, though, countered and said it wouldn't apply to you anyway because of the time concession. Do you concede that? No, I don't concede that because there are two issues. The first thing is, remember that the 2007 amendments were simply added a section to the original statute, which we cited, which says there is no proof against the judgment of Ellison. And I think you talked about that in one of the ERISA cases. And I think that that amendment was to clarify, well, the purpose of that regulation, that change in statute, was to overturn an opinion by a judge in South Dakota where there are, you know, a 1D. Yes. To overturn 1D. Now, what I think that case is saying, Congress is saying, of course, we don't want to preempt cases. But the 2007 amendments retroactive case is already in progress on or after? No, events occurring. No, it says events occurring after 2002. And there's no case specifically on this. Well, the judgments in DeFrancisco didn't agree with me on this. I think that since Mr. Kern, Mr. Corson was diagnosed after 2000, that that amendment covers it. The diagnosis is the event? Yes, ma'am. Because the statute says event. Statute says event. Now, my opponents, I raise this argument, my opponents addressed this in their argument, and they said, no, no, no, that means that the exposure was before 2002, which it certainly was. But the statute doesn't, the statute says, so I think the question becomes, in answer to Mr. Harris' question, is if the diagnosis is after 2002, doesn't that amendment apply? And I think the answer to that is yes. The only case I'm aware of is DeFrancisco where the judge disagreed with me. Okay. We'll hear from you on the phone. Thank you. Meditation Court, counsel. I'm Tom McGough representing the Appalachian Railroad Friction Products Corporation. The issue is one that courts have faced repeatedly, and it comes to the same conclusion that Judge Goldberg came to in the lower court, and that is that Napier v. Amenicus bond is still good law, that there's full preemption here, and in state court, tort claims by railroad workers for injuries from allegedly defective parts. What is the appropriate remedy for the prosons? For the railroad workers, it's an FDLA lawsuit under the lower burdens of proof. On the court question, we've got four courts of appeals. We have the highest courts in five states, and then we have Pennsylvania. I think I counted in the various cases that I read in Mr. Paul's brief about ten different arguments as to why Napier is no longer good law. The most recent being the Wyeth argument because Wyeth is a recent case, and they've leveraged off that. None of those arguments have been accepted outside Pennsylvania. This could be sort of like Joe Teller's convention, where if you called out a number for the argument, I could cite you three cases in other jurisdictions where courts have rejected that specific argument. Well, what's wrong with the in-shop safety argument that is being made? Well, the in-shop safety sort of merges two arguments, the in-use and the OSHA argument. Let's start with the OSHA argument. Both these issues, by the way, the in-use or in-shop distinction and the OSHA argument, were addressed in Wyeth's brief, and my colleague, Mr. Markowitz, who will follow me in the podium, may have some additional comments, but let me address it right now. The OSHA argument has been rejected by the Fifth Circuit, the Eighth Circuit, and the Supreme Court of Alabama because the Federal Railroad Administration has put out a policy statement that is specifically reserved. They said working conditions, shop conditions, that's for OSHA, but we are going to specifically reserve our jurisdiction, our exclusive jurisdiction, over railroad equipment, and that's what this is about. This is about, as Your Honor, Judge Mandel called it out, this is about broke shoes and how you make them. So the OSHA argument, number whatever, has been rejected by three courts for that very reason. The Federal Railroad Administration has retained jurisdiction, regulatory jurisdiction, over equipment. Did the complaint characterize the problem as lack of prevention in the in-shop area, or did it characterize it related to the specific equipment? I'm just trying to... It was a product liability claim with failure to warn. Yeah, exactly. Failure to warn. Now, the in-use versus non-service distinction, that distinction has been raised repeatedly. The district court discussed it. Judge Goldberg discussed it in his opinion. The legal case discusses it. And what that does is it tries to report from the BIA, the Border Inspection Act, a concept that only has applicability in a railroad worker's suit against it in an FBLA context. Outside the FBLA, is there any cause of action related to locomotive parts that's not preempted? No, no. We don't believe there is. We do not believe there is. That's what the FBLA is for. Now, ATWA, all these arguments have been tried in various courts around the country. In ATWA, in Pennsylvania, apparently any of them work. I mean, ATWA just sort of runs through the railroad arguments and accepts each and accepts about five of the ten that are floated out there. At the end, when ATWA turns to Norfolk, the Norfolk decision, the court itself drops a footnote where it says, the decision as to whether the legal rights or non-rights related to railroad workshops are or are not preempted resides more appropriately in our Supreme Court, to whose attention we strongly recommend it. The Superior Court is basically saying to the Pennsylvania Supreme Court, would you please take another look at this. ATWA doesn't cite any of the authority that exists out there. Pennsylvania is out on an island at this point. And we believe Judge Goldberg got it absolutely right. It's time to bring Pennsylvania back into the fold and establish this rule as a precedential matter in the third circuit. What is this case proceeding in the state court? And is there a fair claim made yet? There was an FDLA claim made on which summary judgment was preempted for a failure to show, basically a failure of factual inadequacy of offer. The state case, as I understand it, after the removal, the plaintiff appealed some summary judgments to the Superior Court. They've now been dismissed for lack of jurisdiction. The problem is that case, that whole case, including the earlier summary judgments, are all in the federal courts. And if they wanted to appeal those, they needed to appeal here. And they didn't do that. So this is really the only piece of the case that is left alive. And our request would be that the court affirm the judgment below. All right. Thank you. My name is Daniel Markovich. I represent the Viet Corp, which, by the way, is its name, not corporation. No period either. Let me begin, since I think I'm here to mop up, to some degree, Mr. Gust's radiant arguments, by discussing what my adversary had to say about this Georgia case, a case which I am even less familiar with than your recollection, Judge Rendell. But in any event, he made three points, which have been responded to in one way or another by Mr. McGough. But let me also comment briefly. First, he said the FRA has never issued regulations for in-shop safety. And as Mr. McGough pointed out, the 1978 policy statement of the FRA said quite specifically that although OSHA could deal with in-shop safety, the FRA retained sole jurisdiction over locomotives and rolling stock, and that only one federal agency ought to do that, and that was the FRA. The result of that is that under the OSHA statute, OSHA is precluded from dealing with locomotives and rolling stock. OSHA itself has agreed in a decision by what I guess is its review committee, which we cite in our brief. Numerous federal and some state courts have also agreed with that. The second thing that Mr. Paul said is that the BIA does not apply at all to in-shop, which is to say off-line, cases. As Mr. McGough also said to you, Mr. Paul is, I think, quite intentionally confusing two separate lines of cases. One line of cases, which is what he is quite properly talking about, is that which says that when a locomotive is off-line, BIA absolute liability standards do not apply to FILA injuries, and that therefore you get to feel a negligence as opposed to absolute liability. But this has nothing to do with the other issue, which is BIA preemption. And in that regard, I point out to you what I think Judge Rendell has said several times, that the field here is the equipment, the locomotive and its parts, its components. What did your client manufacture? Our client manufactured in this event allegedly the locomotives. And I say allegedly because we did not concede that we are the successor of interest. But if anything, it was equipment. That is correct. And by the way, as we pointed out in our brief, although it's not central to the issue here, we didn't even manufacture the installation here. It was concededly manufactured by John's men's name. But in any event, the object here is the locomotive and its parts and components. And that is the field. So the cases dealing with in-shop, offline that say that BIA absolute liability does not apply have nothing whatsoever to do with the issue of BIA field preemption. Thirdly, Mr. Paul said that there are no FRA regulations in any event. But there really is. In 1992... Can I ask you a question? Sure. Does it matter if there are or there are not? Well, it really doesn't. But on the other hand, it is so compelling that there are, that I think that you might want to take into account that in 1992, Congress explicitly told the FRA it was to conduct a rule-making proceeding and determine whether FRA regulations over asbestos were appropriate. And if not, to explain why. And the FRA in 1996 decided, not examining only new locomotives, but also examining old locomotives that were still online, that friable asbestos posed no danger in locomotives and that it was not appropriate to have any regulations affecting asbestos in locomotives. And that finding has as much force as a regulation for the purposes of BIA field preemption. About all I have left to say, unless Your Honor has some questions for me, are first of all that Terminal Railroad, which Norfolk places such great stock in, and Mr. Paul has been arguing so vigorously, and which is also mentioned in Atwell, and I almost feel sorry for the Atwell Court because it couldn't very well say that you were right in 1982 and Norfolk was wrong in 1980, although I guess it could have said that there have been avalanche of cases since then that convinced us that the Pennsylvania Supreme Court wouldn't decide it this way anymore. But many of them, these cases depend very largely on Terminal Railroad. Terminal Railroad, first of all, is a caboose case, so it couldn't possibly involve a BIA, notwithstanding some loose language in the case. Second, it really involves, I think, the Fair Labor Standards Act. It has nothing to do with even BIA or the SAA. And finally, it is notably absent from the last 50 years of BIA jurisprudence. Nobody has cited it since the Pennsylvania Supreme Court until Atwell for this principle. The last thing that I want to say is that it is clear that the 1970 Federal Railroad Safety Act preserves the BIA, including all its precedents. Every case to confront it since then, except Norfolk and its two progeny, has said as much. Indeed, in case anybody is interested, swing votes on the U.S. Supreme Court. In case it is doubtful this case ever gets there since the Supreme Court has… You're saying the last circuit case was written by Kennedy? Yes, that's exactly right. Marshall was written by Judge Kennedy. That was 26 years, 27 years ago. Well, I understand that. And it's probably not going to matter anyway, since the Supreme Court has turned down six similar cases over the past number of years. But we believe this case should be affirmed, not only for the reason it consolidated rail, but also because it's the right decision based on the avalanche of cases since then. Who is the defendant in Terminal Railroad? The defendant in Terminal Railroad… Was it the railroad? I guess it must have been the railroad. That makes sense. I would guess so. The only way I can tell is if you give me a moment to look at my table of contents, and I'll tell you. It's not cited in the brief. Well, the case is called Terminal Railroad against Brethren of the Railroad, Train Men, and you can bet they run the railroad to play this. Thank you so much. Mr. Paul, how can this be an in-shop safety case if the defendants are manufacturers of a product and have no jurisdiction, have no control over the workplace? Well, the first answer is it's an in-shop case because that's where the material worked on, the locomotives and the… But you did not plead that there was an improper working place, did you? Oh, we did. It's in our complaint short. And you're saying that the brake shoe manufacturers and locomotive manufacturers should somehow have come into the working place and made it safe. They should have warned about the hazards of working with the product in the shop. With the product? Yes, ma'am. The product. Now, remember that under Pennsylvania law, a case called Burbage v. Boiler Engineering, and other cases, the Supreme Court of Pennsylvania has said, as a matter of Pennsylvania law, that if you sell a boiler and the boiler has a valve or a similar… Is this in your brief? No, ma'am. Is all Terminal Railroad not in your brief? Terminal Railroad is not in my brief. It's cited. Let me address the questions that were addressed. The first one we dealt with Judge Zagaras' question procedurally, and I want to talk about some legal issues. What happened procedurally is Judge Jaresko in the state court dismissed the railroad on the grounds that, even though the American Association of Railroad Men who said asbestos is hazardous were introduced in a Supreme Court of Pennsylvania case called Dale, that court said that was sufficient to get to a jury. Judge Jaresko said, no, it's not. That was appealed. In the meantime, we filed a motion to reconsider old summer judgment grants with Judge Giles. Judge Giles in the Eastern District said there was no jurisdiction. So we went back to the Superior Court to argue that appeal, and then the Superior Court said, so the answer to your question is we have no remedy against the railroad, in this case, at this juncture, unless you work to decide, which I think you can, that the railroad is still in the case, that the case is still below, and so this whole appeal is inelocatory, which I think is also an appropriate resolution in this case. Now, in the FRA issuance in 1978 that we discussed, the FRA said that the FRA had never exercised any authority to regulate employee safety in repair shops, and quoted favorably an opinion by the Fourth Circuit, which is cited for Southern Railroad v. SHRC, 539F2nd, which said the FRA had never exercised authority in a shop. Another case that we cited that's also important is the Mocking Association of Railroads v. Department of Transportation, sitting in Senate 3582, which is cited in our brief. In that case, the DC Circuit, in an argument about regulation, said that the FRA had not issued regulations. Those show up wrong. Thank you. Thank you, counsel. We'll take the case under advisement.